## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **CAMERON PADGETT,** | Case No. 1:18-cv-00013 |
| Plaintiff, | Hon. |
| v. | Mag. |
| **NEVILLE G. PINTO,**<br>In his personal and official capacities as<br>president of the University of Cincinnati, | |
| Defendant. | |

**BRISTOW LAW, PLLC**
By: Kyle J. Bristow (#0089543)
P.O. Box 381164
Clinton Twp., MI 48038
(P): (248) 838-9934
(F): (586) 408-6384
(E): BristowLaw@gmail.com
*Attorney for Cameron Padgett*

## PLAINTIFF CAMERON PADGETT'S VERIFIED COMPLAINT
## (JURY DEMAND ENDORSED HEREON)

NOW COMES Cameron Padgett ("Plaintiff"), by and through Attorney Kyle J. Bristow of Bristow Law, PLLC, and hereby propounds upon Neville G. Pinto ("Defendant") and this Honorable Court Plaintiff Cameron Padgett's Verified Complaint:

## I. INTRODUCTION

1. Plaintiff sues Defendant—by invoking 42 U.S.C. § 1983—for Defendant having wantonly violated Plaintiff's right to free speech—as guaranteed to Plaintiff by the First and Fourteenth Amendments to the United State Constitution—by requiring Plaintiff to pay an unconstitutional security fee if Plaintiff elects to rent a publicly available room on the campus of the University of

Cincinnati ("UC") in order for Plaintiff to host Richard Spencer ("Spencer") of the National Policy Institute ("NPI") as a speaker—in addition to other speakers, including but not limited to Plaintiff—to share with attendees of said event their identitarian and Alt-Right political philosophies.

## II. PARTIES

2. Plaintiff is an adult natural person, a citizen by birth of the United States of America, and a domiciliary of the State of Georgia.

3. Defendant is an adult natural person who is the president of UC and is ultimately responsible for all policies enacted and enforced at UC—including the deprivation of Plaintiff's constitutional rights challenged herein. Defendant is sued in his personal and official capacities as an agent of UC. At all times relevant to the instant controversy, Defendant acted under the color of state law.

## III. JURISDICTION AND VENUE

4. This Court enjoys subject matter jurisdiction over the instant civil action because the controversy involves a federal question about Plaintiff's constitutional right to free speech being violated by Defendant. 28 U.C.C. §§ 1331, 1343, 2201; 42 U.S.C. § 1983.

5. This Court enjoys personal jurisdiction over Defendant because Defendant is subject to the jurisdiction of a court of general jurisdiction within the State of Ohio since Defendant is located in the State of Ohio and Defendant did and caused tortious injury to Plaintiff in the State of Ohio. Fed. R. Civ. P. 4(k)(1)(A); R.C. § 2307.382(A)(3); R.C. § 2307.385.

6. Venue is appropriate with this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Court's jurisdictional district. 28 U.S.C. § 1391(b)(2).

## IV. STATEMENT OF FACTS

7. Plaintiff is a student at Georgia State University who subscribes to identitarian philosophy. At all times relevant to the instant controversy, Plaintiff does not engage in or advocate criminal conduct.

8. Identitarian philosophy is a Eurocentric political ideology which advocates the preservation of national identity and a return to traditional Western values.

9. Plaintiff is a supporter of Spencer and Plaintiff has organized a number of events at college campuses at which Spencer and other identitarian and Alt-Right political activists invited by Plaintiff speak as Plaintiff's guests.

10. Alt-Right—an abbreviation of "alternative right"—is a Eurocentric political ideology which advocates the preservation of national identity, a return to traditional Western values, and advances European racial interests. Race-based preferential treatment for non-Europeans (a/k/a affirmative action), non-European immigration to European countries and their former colonies, international free trade agreements, radical feminism, sexual deviancy, and the ideology of multiculturalism are strongly criticized by adherents of Alt-Right philosophy.

11. Spencer is arguably the foremost advocate for Alt-Right philosophy in the world and is rapidly becoming a major figure in contemporary American politics. Spencer graduated from the University of Virginia with a Bachelor of Arts degree, the University of Chicago with a Master of Arts degree, and pursued a Ph.D. in modern European intellectual history at Duke University. At all times relevant to the instant controversy, Spencer does not engage in or advocate criminal conduct.

12. NPI is a think-tank based in City of Alexandria, Commonwealth of Virginia, for which Spencer serves as its figurehead. NPI promotes Alt-Right philosophy through its publications and

private and public events. At all times relevant to the instant controversy, NPI does not advocate criminal conduct.

13. Due to the political viewpoint of Plaintiff, Spencer, and NPI, people who are politically left-of-center find Plaintiff's, Spencer's, and NPI's constitutionally-protected political views to be objectionable. Activists affiliated with the Antifa political movement have previously violently attacked Spencer and Spencer's supporters at venues at which Spencer and Spencer's supporters peacefully assembled with the explicit goal of shutting down their events.

14. Antifa—an abbreviation of "anti-fascist"—is an unincorporated and international organization of radically left-wing activists who resort to violence as a matter of practice to try to oppress people of a right-of-center, identitarian, or Alt-Right political persuasion. Usually clothed in black and wearing masks to conceal their identities, Antifa activists routinely show up to politically right-of-center, identitarian, and Alt-Right events with baseball bats, knives, sticks, pepper spray, and other weapons to attack their political opponents. Antifa activists often throw water balloons filled with urine and other harmful objects at politically right-of-center, identitarian, and Alt-Right people without lawful justification.

15. UC is a public university principally located in City of Cincinnati, Hamilton County, State of Ohio. UC is organized under the laws of the State of Ohio pursuant to R.C. §§ 3361.01, *et seq.*

16. Defendant, as the president of UC, is—upon information and belief—the highest-ranking authority figure who makes and implements policy decisions for UC.

17. UC maintains a website at <https://www.uc.edu/eventservices/non-university.html> at which venues on UC's campus are advertised as being publicly available for rent—which includes the Tangeman University Center, which Plaintiff attempted to rent for Plaintiff's planned event.

18. On September 26, 2017, Plaintiff contacted UC to rent a publicly available room on UC's campus for Plaintiff's planned event.  Plaintiff was—and is still—prepared to pay the reasonable rental fee for the room.

19. On September 26, 2017, Ethan Portune ("Portune") who works for UC's Conferences and Event Services, sent an electronic mail to Plaintiff:

> Hi Cameron,
>
> Thank you for reaching out to the University of Cincinnati Conference and Event Services.  In order to reserve Kingsgate you will need to contact Donald Lee Donald.Lee@Marriott.com as we do not handle bookings there personally.
>
> We also have an opening in our UC Great Hall on the date you requested that would fit your needs if you would like to book through us.  I have attached the link below that contains pictures of Great Hall if that might interest you.  If you have any other questions please let me know.
>
> * * *
>
> Thank you,
>
> Ethan Portune

20. On September 26, 2017, Plaintiff sent an electronic mail to Portune:

> Ethan,
>
> Thanks for reaching out so quickly.  I think you are right.  That would be a better venue to book.  10/26 from 7-9pm would be a good date for us also.  The speaker Richard Spencer is controversial so I wanted to be clear on that.  I am booking this space in my own capacity.  Let me know what you think.  You can put us in that time slot.  Thanks, Cameron

21. On September 27, 2017, Portune sent an electronic mail to Plaintiff:

> Hi Cameron,
>
> Yes we would be able to book your event on 10/26, the rental fee is $1500 for your event.  If this works then I can begin to draft your contract and get that sent out.  If you have any more questions please let me know.
>
> Thank you,

Ethan Portune

22. On October 2, 2017, Miller sent Plaintiff an electronic mail:

Mr. Padgett,

I am writing to follow-up on your request submitted through the University's electronic scheduling system on September 26, 2017, to rent space at the University on October 26, 2017 from 7:00-9:00pm. My understanding is that you originally requested space at the Kingsgate Marriott but are also interested in the Tangeman University Center. Your request is currently pending. The University is assessing safety and logistical considerations in response to your request. We will contact you regarding your request once that assessment has been completed.

Thank you.

Jamie Miller, CMP

23. Upon information and belief, on October 12, 2017, the UC Board of Trustees ("UC Trustees") held a special, closed-door session that lasted for hours at which the UC Trustees discussed whether Plaintiff would be permitted to rent a publicly available room on UC's campus. Parker, T.J. "University of Cincinnati hasn't reached a decision about white nationalist speaker." <http://www.wcpo.com/news/education/higher-education/uc-news/university-of-cincinnati-to-make-decision-on-white-supremacist-speaker-richard-spencer>. 13 October 2017.

24. UC has launched a website at <http://www.uc.edu/freespeech.html> on which UC informs the public about Plaintiff's request to rent a publicly available room at said university. On the website, Defendant published a statement—accessible at <http://www.uc.edu/freespeech/statements/president-letter.html>—in which Defendant acknowledged that Defendant is obligated to comply with the First Amendment to the United States Constitution by letting Plaintiff's planned event proceed.

25. UC, by and through Defendant, has in fact refused to permit Plaintiff to rent a publicly available room on UC's campus—unless Plaintiff pays an exorbitant fee for security—to exercise

Plaintiff's right to free speech at which Plaintiff would host identitarian and Alt-Right activists to speak about their political views.

26. On December 14, 2017, UC Vice President for Legal Affairs & General Counsel Lori A. Ross ("Ross") informed Plaintiff's undersigned attorney that Plaintiff could rent Zimmer Hall on March 14, 2018, from 10:30 a.m. until 12:30 p.m. if Plaintiff pays $11,333.00 for the same.

27. By letter dated December 15, 2017, Ross informed Plaintiff's undersigned attorney that the rental fee for the room would be $500 and that "security costs and fees" would amount to $10,833.00.

28. UC maintains a webpage at <http://www.uc.edu/publicsafety/services/special-events/faq.html> at which UC informs the public that UC determines the cost of security fees for people to rent publicly available rooms on its campus in part by the criterions of "Is the event/speaker controversial?" and "Have any threats been received?" Such criterions constitute unconstitutional content discrimination—both facially and as-applied to Plaintiff.

29. The criterions used by UC to calculate the rental fees for events on its campus give unconstitutionally overly broad discretion to UC to assess security costs, and such is facially unconstitutional under the overbreadth doctrine.

30. The criterions used by UC to calculate the rental fees for events on its campus explicitly authorizes UC to "examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response"—which is unconstitutional content discrimination pursuant to *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 123-124 (1992).

31. Defendant's decision to charge Plaintiff for security if Plaintiff is to rent a publicly available room on UC's campus due to the controversial subject matter of Plaintiff's proposed

event and/or violence implicitly or explicitly threatened by politically left-of-center and Antifa protesters and not by the speakers of said event constitutes unconstitutional content discrimination in the form of a heckler's veto.   See *Forsyth County*, *supra*; *Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010); *Bible Believer's v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015).

32. Upon information and belief, there is an alarming trend in the United States of America in which politically right-of-center events hosted on the campuses of public universities require costly security measures to be utilized to try to prevent violent left-of-center political terrorists from causing property damage or personal injury to the event venues and people who are sympathetic with the speakers' right-of-center political views.  For example, the University of Florida spent nearly $600,000.00 to provide security for Spencer to speak there for two hours,[1] approximately $600,000.00 was planned to be spent by the University of California-Berkeley for security for a brief speech by conservative commentator Ann Coulter,[2] the University of California-Berkeley spent approximately $600,000.00 for security for a brief speech by conservative commentator Ben Shapiro,[3] and the University of California-Berkeley planned to spend upwards of $1,000,000.00 for a brief speech by conservative commentator Milo Yiannopoulos.[4]  If security costs could be passed on in whole or in part by universities to event

---

[1] Calfas, Jennifer.  "How Much White Nationalist Richard Spencer Is Costing the University of Florida."   <http://time.com/money/4987460/how-much-white-nationalist-richard-spencer-is-costing-the-university-of-florida/>.  18 October 2017.
[2] Schellong, Megan.  "Here's how much security costs when an incentiary speaker comes to campus."   <http://college.usatoday.com/2017/09/13/heres-how-much-security-costs-when-an-incendiary-speaker-comes-to-campus/>.  13 September 2017.
[3]  Gecker, Jocelyn.   "The Cost of Free Speech Isn't Cheap at UC Berkeley."  <https://www.usnews.com/news/politics/articles/2017-09-14/uc-berkeley-under-tight-security-for-conservative-speaker>.  15 September 2017.
[4] Lerner, Kira.  "Berkeley plans $1 million spend on security for Milo Yiannopoulos' event amid massive budget cuts."  <https://thinkprogress.org/berkeley-free-speech-cost-c140085b8cc0/>.  22 September 2017.

organizers who espouse politically right-of-center political ideas, then such would result in *de facto* censorship insofar as fewer—or no—right-of-center political events could occur on American college campuses due to the massive security costs that directly and proximately are a product of the reaction of violent politically left-of-center protesters.

33. Although Defendant apparently believes that Plaintiff's constitutionally-protected political ideas—and speech in support thereof—to be inflammatory, neither Plaintiff nor Spencer speak in a manner that "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." See *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

34. Defendant has no reason to believe that Plaintiff, Spencer, or anyone else who Plaintiff would invite to speak at Plaintiff's planned UC event will in fact engage in and/or advocate offensive criminal misconduct at it.

35. Upon information and belief, Defendant finds identitarian and Alt-Right philosophy to be objectionable and is discriminating against Plaintiff therefor.

36. Plaintiff is neither an employee nor agent of Spencer or NPI. When Plaintiff contacts possible venues to inquire about renting publicly available rooms for Plaintiff's planned events to promote identitarian and Alt-Right philosophy, Plaintiff does so in Plaintiff's personal capacity. When Plaintiff corresponded with agents of UC, Plaintiff made it unequivocally clear that Plaintiff was attempting to rent a room in Plaintiff's personal capacity and not on behalf of Spencer or NPI. Had UC provided Plaintiff an acceptable contract for the requested room rental, Plaintiff fully intended to enter into it in Plaintiff's personal capacity, and Plaintiff would have himself paid for the rental of the room out of Plaintiff's personal finances. Defendant refused Plaintiff the opportunity for Plaintiff to exercise his own right to free speech by prohibiting Plaintiff from

renting the room for the purpose intended by Plaintiff unless Plaintiff paid an unconstitutionally discriminatory fee for security.

37. To date, Plaintiff has arranged for Plaintiff, Spencer, and other invited guests to speak at Auburn University and the University of Florida. At these events, Plaintiff and other identitarian and Alt-Right political activists invited by Plaintiff to participate spoke about their philosophies. For example, at Auburn University, Spencer, Attorney Sam Dickson, and Michael "Enoch" Peinovich ("Peinovich") of *The Right Stuff* spoke, and at the University of Florida Peinovich, Elliott "Eli Mosley" Kline of Identity Evropa, Spencer, and Plaintiff spoke.

38. Spencer's April 2011 event at Providence College—which was organized by someone other than Plaintiff—can be viewed on YouTube at <https://www.youtube.com/watch?v=Vw2V42KS1zc>. Other than Antifa activists showing up with a megaphone and briefly disrupting the event, the event otherwise proceeded without disruption.

39. Spencer's December 2016 event at Texas A&M University—which was organized by someone other than Plaintiff—can be viewed on YouTube at <https://www.youtube.com/watch?v=wlbLNWIFEY0>. Although there was some heckling at times, the event otherwise proceeded without disruption.

40. Plaintiff's April 2017 event at Auburn University can be viewed on YouTube at <https://www.youtube.com/watch?v=7jgyT67fP6k>. Although there was some heckling at times, the event otherwise proceeded without disruption.

41. Plaintiff's October 2017 event at the University of Florida can be viewed on YouTube at <https://www.youtube.com/watch?v=UZK_999sTgU>. The event was disrupted due to politically left-of-center protesters repetitively chanting and yelling throughout the event and the police

10

officers at the event unconstitutionally refusing to maintain order so that the protesters could drown out the speakers' speeches.

42. Plaintiff desires to host Plaintiff's proposed event at UC so as to educate the students of UC and Ohioans in general about identitarian and Alt-Right philosophy.  Plaintiff wants Plaintiff, Spencer, and Plaintiff's other invited speakers to be able to safely and meaningfully share with attendees of the event their political philosophies—and for people who are opposed to the speakers' ideas to have a meaningful opportunity to respectfully challenge the speakers during a question and answer session following the speakers' presentations.  The best way by which Plaintiff can share Plaintiff's philosophy with UC students is by Plaintiff having Plaintiff's proposed event on UC's campus during the academic year.

43. Plaintiff is entitled to an award of punitive damages against Defendant because Defendant caused harm to Plaintiff that was malicious, oppressive, and/or in reckless disregard of Plaintiff's rights.

44. Defendant does not enjoy qualified immunity for Defendant's tortious conduct Defendant committed against Plaintiff, because the right of a citizen of the United States of America to speak about controversial political subject matter over the objection of people in opposition to the same who threaten disruption is clearly established constitutional law—and a price tag cannot be affixed to the exercise of the right to speak freely in the form of security costs being determined by the content of the speech or a community's hostile reaction to the same.  See *Forsyth County*, *supra*; *Sonnier*, *supra*; *Bible Believer's*, *supra*; *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973) ("[S]tate officials not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights."); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) (holding that the First Amendment applies to

public schools); *Widmar v. Vincent*, 454 U.S. 263 (1981) (holding that when a public university opens its facilities to the public for use, the university creates a forum subject to the First Amendment); *Rosenberger v. University of Virginia*, 515 U.S. 819 (1995) (holding that a public university may not discriminate against a point of view in a limited public forum such a university creates); *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384 (1993) (holding that a public school which opens its facilities to the public creates a limited public forum and the school cannot engage in viewpoint discrimination); *McCauley v. University of the Virgin Islands*, 618 F.3d 232 (3rd Cir. 2010) (providing an excellent summary of the clear differences between high schools and colleges and the important rationales underlying the different speech rights afforded to people at each); First Amendment to the United States Constitution; Fourteenth Amendment to the United States Constitution; see also "Guide to Free Speech on Campus, Second Edition." The Foundation for Individual Rights in Education. <https://dfkpq46c1l9o7.cloudfront.net/wp-content/uploads/2014/02/FIRE-Guide-to-Free-Speech-on-Campus-2nd-ed.pdf>. 2012.

45. Irrespective of whether or not Defendant enjoys qualified immunity, "[q]ualified immunity only shields government officials from monetary damages, not from injunctive relief[.]" *Ward v. Polite*, 667 F.3d 727, 742 (6th Cir. 2012) (citations omitted).

## V.  CAUSES OF ACTION

### COUNT I
### DEFENDANT VIOLATED PLAINTIFF'S
### FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE SPEECH
### 42 U.S.C. § 1983

46. The foregoing paragraphs of this Complaint are incorporated by reference as if each is fully set forth herein.

47. Plaintiff is guaranteed the right to free speech pursuant to the First and Fourteenth Amendments to the United States Constitution.

48. Defendant violated Plaintiff's right to free speech by requiring Plaintiff to pay a non-nominal fee for security if Plaintiff elects to rent a publicly available room on UC's campus to host speakers—including Plaintiff, Spencer, and other identitarian and Alt-Right activists—to share with attendees of the planned event their identitarian and Alt-Right philosophies. The security fee was assessed due to the community's expected hostile reaction to the political viewpoint espoused by Plaintiff and/or the content of Plaintiff's planned event.

49. The criterions of "Is the event/speaker controversial?" and "Have any threats been received?" used by Defendant to assess security costs for UC events are facially unconstitutional insofar as such constitutes content discrimination and/or is overly broad. Furthermore, such criterions are unconstitutionally being applied to Plaintiff in the instant controversy.

50. Defendant's decision to impose upon Plaintiff a non-nominal—and cost-prohibitive—security fee constitutes an unconstitutional prior restraint on speech.

51. Defendant acted under the color of state law.

52. Due directly and proximately to Defendant having violated Plaintiff's right to free speech, Plaintiff has and will continue to suffer injuries.

WHEREFORE, Plaintiff prays that this Honorable Court will enter judgment in Plaintiff's favor against Defendant by awarding Plaintiff: (1) a money judgment against Defendant—in Defendant's personal capacity—in the amount of two million dollars ($2,000,000)—or any amount the factfinder deems just and proper—for general and punitive damages; (2) the reasonable attorney's fees and costs incurred by Plaintiff to prosecute the instant civil action pursuant to 42 U.S.C. § 1988(b); and (3) any and all further relief that can be awarded by law or equity.

## COUNT II
## DECLARATORY AND INJUNCTIVE RELIEF

53. The foregoing paragraphs of this Complaint are incorporated by reference as if each is fully set forth herein.

54. The Court can and should decree that Defendant violated Plaintiff's right to free speech by requiring Plaintiff to pay a non-nominal security fee—based in part upon the community's expected hostile reaction to the political viewpoint espoused by Plaintiff or the content of the proposed event's speech—to rent a publicly available room on UC's campus.  See 28 U.S.C. §§ 2201 and 2202.

55. This Court can and should issue preliminary and permanent injunctions against Defendant whereby Defendant is ordered to permit Plaintiff to rent a publicly available room on the campus of UC for a reasonable rental fee to host speakers—including Plaintiff, Spencer, and other identitarian and Alt-Right activists—to share with attendees of the planned event their identitarian and Alt-Right philosophies without Plaintiff being required to pay for police protection or posting bond or providing insurance for the event and which also requires UC to maintain law and order via the use of law enforcement officers of its police department so as to protect the right of the attendees of the event to safely speak in a meaningful manner.  See Fed. R. Civ. P. 65; *Bible Believers*, supra; *Forsyth County*, *supra*; *Sonnier*, *supra*; *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (describing elements for injunctive relief to be awarded); *Solid Rock Foundation v. Ohio State University*, 478 F.Supp. 96 (S.D. Ohio 1979) (using Sixth Circuit and Supreme Court case law to decide whether a preliminary injunction should issue for a First Amendment-related case involving a public university).

56. Plaintiff has a likelihood of success on the merits of Plaintiff's claim that Defendant violated Plaintiff's right to free speech.

57. Plaintiff will suffer irreparable harm in the form of Plaintiff's right to free speech being denied to him should the Court not grant Plaintiff injunctive relief.  See *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

58.  The issuance of an injunction to permit Plaintiff to rent a publicly available room on the campus of UC for a reasonable rental fee to host speakers—including Plaintiff, Spencer, and other identitarian and Alt-Right activists—to share with attendees of the planned event their identitarian and Alt-Right philosophies without Plaintiff being required to pay for police protection or posting bond or providing insurance for the event and which also requires UC to maintain law and order via the use of law enforcement officers of its police department so as to protect the right of the attendees of the event to safely speak in a meaningful manner will not cause Defendant to suffer substantial harm because Defendant is required by constitutional law to do the same anyways.

59. The issuance of an injunction to permit Plaintiff to rent a publicly available room on the campus of UC for a reasonable rental fee to host speakers—including Plaintiff, Spencer, and other identitarian and Alt-Right activists—to share with attendees of the planned event their identitarian and Alt-Right philosophies without Plaintiff being required to pay for police protection or posting bond or providing insurance for the event and which also requires UC to maintain law and order via the use of law enforcement officers of its police department so as to protect the right of the attendees of the event to safely speak in a meaningful manner will serve the public interest because it is in the public's interest for the First and Fourteenth Amendments to the United States Constitution to be honored and not disregarded by governmental actors.

WHEREFORE, Plaintiff prays that this Honorable Court will award Plaintiff (1) declaratory relief by decreeing that Defendant violated Plaintiff's right to free speech by requiring Plaintiff to pay a non-nominal security fee—based in part upon the community's expected hostile reaction to the political viewpoint espoused by Plaintiff or the content of the proposed event's speech—to rent a publicly available room on UC's campus and (2) preliminary and permanent injunctive relief whereby Defendant is ordered to timely permit Plaintiff to rent a publicly available room on the campus of UC for a reasonable rental fee to host speakers—including Plaintiff, Spencer, and other identitarian and Alt-Right activists—to share with attendees of the planned event their identitarian and Alt-Right philosophies without Plaintiff being required to pay for police protection or posting bond or providing insurance for the event and which also requires UC to maintain law and order via the use of law enforcement officers of its police department so as to protect the right of the attendees of the event to safely speak in a meaningful manner.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby respectfully demands a trial by jury as to all triable issues of fact in the instant civil action.

Respectfully submitted,

**BRISTOW LAW, PLLC**

/s Kyle J. Bristow
Kyle J. Bristow (#0089543)
P.O. Box 381164
Clinton Twp., MI 48038
(P): (248) 838-9934
(F): (586) 408-6384
(E): BristowLaw@gmail.com
*Attorney for Cameron Padgett*

Dated: January 8, 2018

## <u>VERIFICATION</u>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  28 U.S.C. § 1746.

_____
Cameron Padgett
*Plaintiff*

Executed on ___1/8/18___